IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MELISSA MCKEE, IN HER CAPACITY AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARIA BAKER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JASON BAKER, *et al.*, <br><br> Defendants. | Civil Case No. SAG-25-02816 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>MEMORANDUM OPINION</u>**

Plaintiffs Melissa McKee, in her capacity as personal representative of the Estate of Maria Baker ("the Estate"), Elliot McKee, Samuel McKee, Charles McKee, and Andrew McKee (collectively, "Plaintiffs") filed this lawsuit in state court against Defendants Jason Baker and Baker Wealth Management, Inc. ("BWM," and collectively with Jason Baker, "Defendants"), asserting claims arising out of Defendants' service as financial advisor to the decedent, Maria Baker. ECF 4. Defendants removed the case to this Court and have now filed a motion to dismiss, citing a lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. ECF 13. Plaintiffs opposed the motion, ECF 16, and Defendants filed a reply, ECF 21. This Court has also considered a fully contested motion to file a surreply, ECF 22, 23, 24. The surreply motion will be granted because this Court finds that the "probate court" argument was raised for the first time in Defendants' reply.[1] Having carefully considered all of the filings, this

---

[1] This Court ultimately finds the "probate court" argument to be inapposite and will not address it further, because it agrees with Plaintiffs that the Complaint alleges that the accounts in question transferred by beneficiary designation and thus passed outside the jurisdiction of the probate court. *See* Md. Code, Estates and Trusts, §§ 1-401, 16-109. However, this Court did review the surreply to understand the parties' respective positions.

Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, the motion to dismiss will be granted in part and denied in part.

## I.    FACTUAL BACKGROUND

The facts below are derived from the Complaint and taken in the light most favorable to Plaintiffs, the non-moving party. Plaintiff Melissa McKee is the adult daughter of Maria Baker, who died on March 23, 2024. ECF 4 ¶ 4. Melissa McKee serves as Personal Representative of Maria Baker's estate ("the Estate"). *Id.* The remaining Plaintiffs, in addition to the Estate, are four grandsons of Maria Baker (collectively, "the Grandsons"). *Id.* ¶¶ 5–8.

Jason Baker is the adult son of Maria Baker and also works as a registered investment advisor. *Id.* ¶ 9. Jason Baker acts as a financial advisor using the trade name Baker Wealth Management, Inc. ("BWMI"). *Id.* ¶ 10.

In 2017, Maria Baker, through her financial advisor, Jason Baker, opened two brokerage accounts at Fidelity Investment Services, LLC, with a combined estimated value approximating $500,000. *Id.* ¶ 11. At the accounts' opening, the transfer on death designation provided that Jason Baker and Melissa McKee would receive 50% of the value of each account on Maria Baker's death. *Id.*

During late 2017 into 2018, Maria Baker decided to remarry and hired an estate planning lawyer to effectuate her desire to leave the bulk of her assets to her grandchildren. *Id.* ¶ 12. In particular, she informed her lawyer, Lindsey Erdmann, that she desired to divide the two Fidelity accounts equally amongst her five grandchildren.[2] *Id.* ¶ 13. Maria Baker also reflected her desire in her Last Will and Testament dated March 20, 2018, which provides that the interest in the two

---

[2] The five grandchildren are the four Grandsons and Jason Baker's daughter. ECF 4 ¶ 13.

Fidelity Brokerage accounts should be divided among her five grandchildren "in equal shares by right of representation." *Id.*

In 2018, Maria Baker also informed Jason Baker that she wanted the transfer on death designations for the two Fidelity accounts to be changed to reflect her decision that the accounts should be divided equally amongst her five grandchildren. *Id.* ¶ 14. Jason Baker became upset and "cursed his mother for significantly diminishing his future inheritance." *Id.* Despite his reaction, "Maria Baker believed that Jason Baker had honored her wishes and updated the beneficiary designation forms for each Fidelity account." *Id.*

Jason Baker did not update the beneficiary forms as directed before Maria Baker's death in March, 2024. *Id.* ¶ 15. Moreover, he provided false and misleading "instruction" to Maria Baker regarding how to change the beneficiary designations on her accounts. *Id.* ¶ 17.

After Maria Baker's death, at her wake, Jason Baker wrongfully took possession of original sealed death certificates from the funeral home and used them to have Fidelity transfer 50% of the two accounts to an account under his control. *Id.* ¶ 19. As a result, the five grandchildren, including the Plaintiff Grandsons, have not received their rightful shares of the two accounts. *Id.* ¶ 20.

## II.    LEGAL STANDARD

Defendants seek to dismiss the Complaint under two distinct rules: Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Turning first to Rule 12(b)(1), Defendants cite a lack of subject matter jurisdiction, or, specifically, lack of standing as to the Grandsons' claims. While the plaintiff bears the burden of proving that the court has jurisdiction over the claim or controversy at issue, a Rule 12(b)(1) motion should only be granted if the "material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (quoting *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999)). In a motion to dismiss for lack of

subject matter jurisdiction, the pleadings should be regarded as "mere evidence on the issue," and courts may "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F. 3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

Standing is a doctrine rooted in the traditional understanding of an Article III "case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The burden is on the plaintiff to establish the three elements of standing. *Id.* (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).

Next, under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, "[a] court decides whether [the pleading] standard is met by separating the

5

legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## III.   ANALYSIS

### A.  12(b)(1) Standing Analysis

Plaintiffs' Complaint asserts seven causes of action. The first six are expressly asserted only on behalf of "Melissa McKee, in her capacity as the Personal Representative of the Estate of Maria Baker." *See* ECF 4 at 11, 13, 15, 16, 18, 19. The seventh, for tortious interference with expected inheritance, is asserted on behalf of the Grandsons. ECF 4 at 21. The standing arguments made on pages 8–12 of Defendants' motion, then, all address claims that the Grandsons have not asserted. *See* ECF 13 at 8–12.[3] And Defendants' standing argument with respect to the tortious interference claim is unpersuasive. The argument boils down to "the Grandsons suffered no injury because they weren't entitled to the proceeds because Maria Baker did not properly change the account beneficiaries," *see id.* at 12–13, which invites a determination of the merits of the parties' positions that is premature at the pleading stage. Plaintiffs have alleged that the failure to change the account beneficiaries is attributable to Jason Baker and his employer, not to Maria Baker.

Under the low bar standard employed at the motion to dismiss stage, the Grandsons have plausibly pleaded that they suffered financial injury-in-fact traceable to actions taken by the Defendants. Those allegations suffice to establish their standing to bring their claim for tortious

---

[3] Where the page numbering differs, this Court uses the ECF page designations at the top of each page.

interference with expected inheritance.[4] Defendants may, of course, re-raise the standing issue as the evidentiary record expands in discovery.

### B. 12(b)(6) Failure to State a Claim

Defendants first argue that all of Plaintiffs' claims are time-barred because Maria Baker was on inquiry notice in 2018 that Jason Baker was upset about the proposed change in beneficiary and had provided Maria Baker with instructions to change the beneficiary. Defendants suggest, as a result, that "Reasonable diligence required Maria to investigate whether Jason had changed her beneficiaries." ECF 13 at 15. This Court is unpersuaded. Taking all facts in the light most favorable to Plaintiffs, as this Court must at the motion to dismiss stage, Plaintiffs have plausibly alleged that Maria Baker believed, based on Jason Baker's representations to her, that he would make the instructed beneficiary change. Reasonable diligence, in the light most favorable to Plaintiffs, would not have required further inquiry because it could not be said that Maria Baker knew or should have known of the wrong. *See O'Hara v. Kovens*, 305 Md. 280, 294–95 (1986) (noting that questions of whether a party exercised reasonable diligence are "ordinarily a question of fact for the jury"). And, at the very least, the conversion and intentional interference with expected inheritance counts did not accrue until Jason Baker claimed the benefits for himself in 2024.

Second, Defendants submit exhibits to suggest that Fidelity, through its registered entities, required an account owner to execute a signed letter of intent directing a change in beneficiary. ECF 13 at 16; ECF 13-1. This Court cannot consider such extrinsic exhibits when considering a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Decoster v. Becerra*, 119 F.4th 332, 336 n.1 (4th Cir.

---

[4] Plaintiffs appear to argue in their opposition that the Grandsons have standing to assert a conversion claim in Count VI. ECF 16 at 10. But as they have not done so in the Complaint, this Court need not address the issue.

2024) ("When deciding a motion to dismiss under Rule 12(b)(6), the court does not consider extrinsic evidence.").

Third, Defendants argue that the fraud and negligent misrepresentation counts have not been pleaded with particularity. ECF 13 at 17–19. On that point, this Court agrees. To the extent Plaintiffs allege that Jason Baker committed fraud or negligent misrepresentation, Federal Rule of Civil Procedure 9(b) requires that they allege the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999); *see also Guido v. Advanced Infusion, Inc.*, Civ. No. L-10-423, 2010 WL 11691938, at *2 (D. Md. Sept. 15, 2010) (extending the Rule 9(b) requirement to plead with particularity to negligent misrepresentation claims).

Plaintiffs argue that the requirement is relaxed because they have alleged fraud based on omission, which may be accurate in part. But they have also specifically alleged that Jason Baker made certain affirmative representations that he would update the beneficiary designations and that he provided Maria Baker with false instructions about how to update them. As to those representations, Plaintiffs have not provided specific "time, place, and contents" information sufficient to satisfy Rule 9(b).

Plaintiffs further argue that their constructive fraud claim is not subject to Rule 9(b)'s particularity requirement. ECF 16 at 21–22. Courts are split on the issue, and the Fourth Circuit has not decided the question. As this Court explained in *Franzoy v. Yockey*, 695 F. Supp. 3d 696, 700 (D. Md. 2023):

> Constructive fraud is a "breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Canaj, Inc. v. Baker & Div. Phase III, LLC*, 391 Md. 374, 893

A.2d 1067, 1095 (2006) (internal quotation marks omitted) (quoting *Md. Envtl. Trust v. Gaynor*, 370 Md. 89, 803 A.2d 512, 516-17 (2002)). Such a claim may arise in connection with a breach of fiduciary duty such as the one alleged by Plaintiffs. See *Crawford v. Mindel*, 57 Md. App. 111, 469 A.2d 454, 459 (1984) ("Based on the fiduciary duty appellant Crawford owed to the corporation and the individual appellees, his conduct may be categorized as a classic example of constructive fraud, which usually arises from a breach of duty where a relationship of trust and confidence exists.").

This Court is persuaded by the line of cases suggesting that Rule 9(b) does not apply to constructive fraud. The gravamen of constructive fraud is the breach of duty, not the "fraud or mistake" contemplated in Rule 9(b). Accordingly, this Court declines to dismiss Plaintiffs' constructive fraud claim for lack of particularity.

Fourth, Defendants argue that Plaintiffs' negligence-based claims, for negligent misrepresentation/omission and breach of fiduciary duty, are incompatible with their claims for intentional fraudulent conduct. That argument is a non-starter because Federal Rule of Civil Procedure 8(d)(2) expressly permits parties to plead in the alternative. *See Polar Commc'ns Corp. v. Oncor Commc'ns, Inc.*, 927 F. Supp. 894, 896 (D. Md. 1996) (noting that parties may plead "as many theories as the facts will fit.").

Fifth, Defendants contend that Count V, which alleges a breach of contract, must be dismissed because Plaintiffs have not asserted a contractual obligation. ECF 13 at 19–20. While it is true that Plaintiffs have not alleged the existence of a written contract, a contractual obligation does not require a writing. *See Heslop v. Dieudonne*, 209 Md. 201, 206 (1956). Plaintiffs allege that "Maria Baker entered into contractual agreements with Defendants whereby, in consideration for commissions, fees and other considerations, she engaged Defendants to act as her financial advisor with regard to her brokerage accounts at Fidelity. As her financial advisor, Defendants were obligated to honor her instructions as they related to the beneficiary designations of each of the two Fidelity Accounts." ECF 4 ¶ 42. Of course, Defendants may eventually demonstrate that

no such contractual agreements existed or that, if a contract did exist, it did not obligate them to honor her instructions. But at the present motion to dismiss stage, Plaintiffs have plausibly alleged the existence of contractual agreements and their breach.

Sixth, Defendants argue that Counts VI (for conversion) and VII (for tortious interference with expected inheritance) must be dismissed because monies held within a larger brokerage account are not "segregated or identifiable," ECF 13 at 20–21, and because they were subsequently comingled with other funds in Jason Baker's bank account. Defendants cite no cases suggesting that those factors preclude a claim for intentional interference with expected inheritance. This Court will therefore deny the motion to dismiss that count. As to the claim for conversion, despite the case law limiting a claim for conversion to monies that are "segregated or identifiable," *Lasater v. Guttmann*, 194 Md. App. 431, 447 (2010) (quoting *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 564 (1999)) the mere fact that funds may be held in an account with other funds does not eliminate any possible conversion claim. *See Sage Title Grp., LLC v. Roman*, 455 Md. 188, 207–08 (2017). In *Lasater,* monies belonging to a wife alone were deposited into a joint account held by husband and wife, comingling those funds such that ownership of any particular sum could not be determined. 194 Md. App. at 447. Here, in contrast, the Fidelity accounts held a particular sum for Maria Baker, and the Plaintiff Grandsons (with Jason Baker's daughter in equal shares) were entitled to a 50% share of those cash accounts. Those funds remained identifiable and segregated, and a conversion count may lie.[5]

Finally, Defendants contend that Plaintiffs failed to allege misconduct on the part of Jason Baker's entity, Defendant BWM. ECF 13 at 21. Plaintiffs premise their claims, not on separate

---

[5] Defendants also argue that Jason Baker co-mingled the funds with his own funds after he obtained them from Fidelity. ECF 13 at 21. The Complaint does not allege co-mingling with personal funds and Defendants' assertion cannot be considered at the motion to dismiss stage.

misconduct, but the doctrines of vicarious liability and apparent authority. They sufficiently allege that Jason Baker took the disputed actions while acting as an "employee, servant, officer and/or owner" of BWM's financial advising business. *See* ECF 4 ¶¶ 49, 55. Under the low bar standard applicable at the motion to dismiss stage, those allegations suffice to state a plausible claim against BWM for the conduct of its employee and servant.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 13, will be GRANTED without prejudice as to Counts I and III (fraud and negligent misrepresentation) and DENIED as to the remaining claims. Plaintiffs' motion to file surreply, ECF 22, will be GRANTED. A separate Order follows.

Dated: May 4, 2026                                      /s/
                                               Stephanie A. Gallagher
                                               United States District Judge

11